703 P.2d 889

**Tiffany KONNICK, et al., Plaintiffs-Appellees,**

v.

**FARMERS INSURANCE COMPANY OF ARIZONA, Defendant-Appellant.**

**No. 15236.**

Supreme Court of New Mexico.

July 30, 1985.

Rehearing Denied Aug. 14, 1985.

Civerolo, Hansen & Wolf, William P. Gralow, Albuquerque, for defendant-appellant.

Shwartz & Loughren, Kevin M. Brown, James J. Loughren, Albuquerque, for plaintiffs-appellees.

## OPINION

SOSA, Senior Justice.

Plaintiffs Tiffany Konnick, Richard Steadman and Jo Steadman brought suit for damages and declaratory relief on the grounds that defendant Farmers Insurance Company of Arizona (Farmers) had refused to pay insurance benefits. The four count complaint alleged that Farmers had refused to pay underinsurance benefits due, had intentionally and negligently inflicted emotional distress on plaintiffs and had violated statutory and fiduciary duties owed to plaintiffs. Plaintiffs moved for partial summary judgment as to Count I asking that the court declare their right to stack two underinsured motorist policies issued to them by Farmers. Defendant responded with its own motion for summary judgment as to that count. The district court granted plaintiffs' motion and defendant appeals. This matter having come before us on interlocutory appeal, the sole issue we address is whether an insured may stack two underinsured motorist policies.

The uncontroverted facts are the following. Farmers issued two insurance policies to the Steadmans, one on each of two automobiles owned by them. Each vehicle had uninsured/underinsured motorist coverage in the amount of $15,000, and a separate premium was paid for each. As stepdaughter of Mr. Steadman, Konnick was an insured under the terms of both policies.

While driving one of the family-owned automobiles, Konnick was struck by a car driven by Phillip E. Gonzales. As a result, Konnick incurred medical expenses in excess of $100,000. Gonzales had liability coverage totalling $15,000. Farmers paid plaintiffs $15,000 under one underinsured motorist policy but failed to tender the proceeds of the second policy.

At the hearing on the motions for summary judgment, the district court found that the tortfeasor was underinsured pursuant to New Mexico's uninsured/underinsured motorist statute. NMSA 1978, § 66-5-301 (Repl.Pamp.1984). The court then found that Konnick was entitled to stack the proceeds of both policies. Therefore, Farmers was ordered to pay the $15,000 available under the second underinsured motorist policy.

On appeal, Farmers contends that although uninsured motorist policies may be stacked, underinsured motorist policies may not be. Defendant argues that the two types of coverage are intrinsically different and based on divergent policy considerations; therefore, they may not be treated alike. Plaintiffs assert that they may stack the two policies in question since underinsured motorist coverage is an extension of uninsured motorist coverage and similar policy considerations underlie each.

New Mexico's uninsured motorist statute provides that "uninsured motorist coverage * * * *shall include underinsured motorist coverage for persons protected by an insured's policy"*. § 66-5-301(B) (emphasis added). Under the express terms of this provision, underinsured motorist protection is a subcategory of uninsured motorist coverage. Similar policy considerations, therefore, inhere in both types of coverages.

This Court observed in *Chavez v. State Farm Mutual Automobile Insurance Co.*, 87 N.M. 327, 329, 533 P.2d 100, 102 (1975), and *State Farm Automobile Insurance Co. v. Kiehne*, 97 N.M. 470, 471, 641 P.2d 501, 502 (1982), that the policy underlying uninsured motorist coverage is to compensate persons injured through no fault of their own. We note, therefore, that in expanding uninsured motorist coverage to include underinsured motorist coverage, the Legislature manifested the intent to compensate the innocent victims of inadequately insured drivers.

■ We have already ruled that stacking is an appropriate means by which to compensate an insured for losses suffered through the fault of an uninsured motorist, where the total payout would not exceed the amount of the insured's damages. *Lopez v. Foundation Reserve Insurance Co., Inc.*, 98 N.M. 166, 646 P.2d 1230 (1982) (allowing intra-policy stacking); *Sloan v.*

*Dairyland Insurance Co.*, 86 N.M. 65, 519 P.2d 301 (1974) (allowing inter-policy stacking). In *Lopez*, 98 N.M. 166, 171, 646 P.2d 1230, 1235, we stated that "[w]here an insurance company charges a separate full uninsured motorist premium for each vehicle under a single or several policies, it is only fair that the insured be permitted to stack the coverages for which he has paid." Addressing the case before us, we find that the stacking of underinsured motorist benefits is an appropriate means by which to compensate losses caused by an underinsured driver. As with uninsured motorist coverage, an insured is entitled to stack the underinsured motorist policies for which separate premiums have been paid. Nothing in the uninsured/underinsured motorist statute or the cases construing the statute indicates otherwise.

Farmers also contends that Konnick is merely an insured under the terms of both policies and that only named insureds may stack policy proceeds.[1] In this regard, Farmers begins by noting that a distinction is made in the policies between the "insured" and the "named insured." The "named insured" is the person specifically designated as such on the face of the policy. The "insured" is defined, in relevant part, as "(1) the named insured as stated in the policy and, while residents of the same household, the spouse of any such named insured and relatives of either; (2) any other person while occupying an insured motor vehicle. * * * *" We agree with defendant that the terms "named insured" and "insured" are not synonymous, the latter being a broader category which encompasses the former.

Defendant then urges that this distinction was crucial to our disposition of the *Lopez* case. In that case, Lopez, the named insured, purchased one policy of uninsured motorist insurance and paid two separate premiums to cover the two cars he owned. While driving one of the covered

---

**1.** We have just noted that underinsured motorist coverage is equivalent to uninsured motorist coverage for purposes of stacking benefits. Thus, in addressing defendant's second contention, cases in which "insureds" versus "named insureds" attempted to stack *uninsured* motorist benefits will be discussed in deciding whether "insureds" versus "named insureds" may stack *underinsured* motorist benefits.

vehicles, Lopez and a passenger, Torres, were killed in an accident with an uninsured motorist. Lopez had been the named insured and he had paid two insurance premiums. In order that Lopez' representatives might reap the benefits of all Lopez had purchased, this Court held that the estate of Lopez was entitled to stack the two uninsured motorist coverages. 98 N.M. at 172, 646 P.2d at 1236. In contrast, Torres' representatives could collect only under the coverage on the vehicle in which Torres was riding, since the protection purchased for Torres' benefit was limited to that vehicle. *Id.*

Defendant argues that for purposes of stacking, *Lopez* recognizes only two categories of claimants: (1) named insureds and (2) additional insureds, defined as passengers riding in an insured vehicle. Thus, defendant concludes that Konnick was an additional insured and stands in the same position as Torres did, since she was not the named insured. In *Lopez* we did hold that "uninsured motorist coverage of passengers who are not named insureds applies only to passengers injured while occupying an insured vehicle." *Id.* However, in *Lopez* we were not confronted with the set of facts before us now. Torres was not a relative of Lopez and, hence, we did not articulate the rule that applies when relatives of named insured seek to stack policy proceeds. We do so now.

Plaintiffs correctly assert that Farmers' uninsured motorist policy recognizes two classes of insureds, relevant to this case. They are, as is noted previously, (1) the named insured as stated in the policy, the spouse, and relatives residing in the household; and (2) any person while occupying an insured motor vehicle. In defining persons to which it will extend coverage, Farmers groups named insureds and family members together in its first class of insureds. This denotes that the two categories of claimants stand in the same position when collecting uninsured/underinsured benefits. The purchaser [2] of underinsured motorist policies expects that he will be protected from losses incurred as a result of the negligence of underinsured motorists no matter what his location at the time of the accident. *Lopez v. Foundation Reserve Insurance Co.* Therefore, by reference to Farmers' classification of claimants, the purchaser would expect that his spouse and relatives would also be afforded that same protection no matter what their location.

In marked contrast, members of class two enjoy insured status only while they occupy an insured vehicle. This is clearly expressed in the definition of "insured" cited above. Thus, in the event that a mere occupant of an insured vehicle is injured by an underinsured motorist, the purchaser of the policy expects that underinsured motorist benefits will be paid to the occupant from that policy. The purchaser, rightfully, would not expect the occupant to recover under any additional policies that the purchaser obtained.

Alabama is one of the majority of jurisdictions which have held that relatives of named insureds may stack the uninsured motorist coverages available under one policy.[3] In reaching this conclusion, the Alabama Supreme Court relied on the statutory underpinnings of the uninsured motorist statute and on the notion that the reasonable expectations of the purchaser of insurance should be deferred to when construing policy provisions. *Lambert v. Liberty Mutual Insurance Co.*, 331 So.2d 260, 263 (Ala.1976). *See also Pribble v. Aetna Life Insurance Co.*, 84 N.M. 211, 215, 501 P.2d 255, 259 (1972). In *Lambert*, the court stated that it had "simply honored the rea-

**2.** We assume, as is usually the case, that the purchaser of the policies is also the named insured.

**3.** In *Lopez*, 98 N.M. at 171, 646 P.2d at 1235, we stated that stacking is permissible when separate premiums had been paid to cover each vehicle. Accordingly, we found that it was in-consequential whether multiple premiums had been paid under one policy to cover several vehicles or whether multiple policies had been purchased to cover several vehicles. Therefore, intra-policy stacking cases are relevant to deciding whether Konnick may stack the two underinsured motorist policies.

sonable expectation of the 'named insured' that his payment of an additional premium will result in increased coverage for those falling within the definition of the named insured." 331 So.2d at 263. The court specifically found that the first class of insureds, which it labelled the "named insured" class, included the named insured and any relative. *Id.* at 264. *See also Holloway v. Nationwide Insurance Co.*, 376 So.2d 690 (Ala. 1979); *Allstate Insurance Co. v. Morgan*, 59 Haw. 44, 575 P.2d 477 (1978); *Sturdy v. Allied Mutual Insurance Co.*, 203 Kan. 783, 457 P.2d 34 (1969); *Auto-Owners Insurance Co v. Traviss*, 72 Mich.App. 66, 248 N.W.2d 673 (1976); *Utica Mutual Insurance Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984); *Cunningham v. Insurance Co. of North America*, 213 Va. 72, 189 S.E.2d 832 (1972).

■ Thus, in concluding that Konnick may stack both underinsured policies we are simply giving effect to the reasonable expectations of Mr. Steadman, the purchaser of the policies. Mr. Steadman would anticipate that the underinsured motorist protection provided by the two policies would redound to the benefit of his stepdaughter no matter where she was when injured by an underinsured motorist. She would not be limited to recovering under the policy on the car in which she rode since her insured status, like that of Steadman's is not conditioned upon her occupying an insured vehicle. Rather, Konnick standing in the same position as the named insured, need only incur losses as a result of the negligence of an underinsured motorist to have both policies available to her.

■ Florida, one jurisdiction which expressly permits relatives of named insureds to stack multiple uninsured motorist policies,[4] acknowledges that the named insured expects his family to receive the same pro-

tection he does under multiple policies. In *Hartford Accident and Indemnity Co. v. Richendollar*, 368 So.2d 603, 603–604 (Fla. App.1979) the court of appeals noted that "[s]tacking is derived from the presumption that where the *named insured* purchases uninsured motorist coverage on more than one automobile, he intends to buy the extra protection for himself and his family, regardless of whether the injury occurs in any one of his insured vehicles or elsewhere." Our conclusion that plaintiff Konnick may stack the policies is based on the presumption that Steadman intended to purchase the extra coverage for himself and Konnick.

In view of all the foregoing, we hold that the district court did not err in finding that Konnick could stack the proceeds of both underinsured motorist policies. We do not, however, address whether this amount should be offset by Gonzales' liability coverage, an issue which the trial court has not yet decided but must reach. The judgment of the district court granting plaintiffs' motion for summary judgment as to Count I is affirmed.

IT IS SO ORDERED.

FEDERICI, C.J., and STOWERS, J., concur.

---

**4.** In *Mullis v. State Farm Mutual Insurance Co.*, 252 So.2d 229 (Fla.1971) the Florida Supreme Court announced that relatives of named insureds could stack uninsured motorist policies. This holding was based on careful scrutiny of Florida's Financial Responsibility Law which specifically defines two classes of insureds and Florida's uninsured motorist statute which incorporates those definitions. Even though our Financial Responsibility Law does not define "insureds", the reasoning of the Florida courts is applicable here to the extent that it addresses the expectations of the purchaser of uninsured/underinsured motorist policies.