849 P.2d 368

**Leodegaria TARANGO, et Vir., Hilario Tarango, Plaintiffs,**

v.

**FARMERS INSURANCE COMPANY OF ARIZONA, Defendant–Appellee,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant–Appellant.**

**No. 20321.**

Supreme Court of New Mexico.

March 3, 1993.

The Farlow Law Firm, LeRoi Farlow, Albuquerque, for appellant.

Reeves, Chavez, Greenfield, Acosta & Walker, P.A., Daniel G. Acosta, Las Cruces, for appellee.

**OPINION**

FROST, Justice.

The sole issue on appeal is whether the Class II insurer Allstate Insurance Company (Allstate) is responsible for paying the entire $15,000 of underinsured benefits due to the injured insured Leodegaria Tarango, or whether the Class I insurer Farmers Insurance Company of Arizona (Farmers) and Allstate each must pay a prorated portion of the underinsured benefits. By declaratory judgment, the trial court found

that Allstate was responsible for paying the entire $15,000 in underinsured benefits. Allstate appeals the decision of the trial court. We affirm.

Tarango was a passenger in an automobile driven and owned by Socorro Alarcon. Alarcon pulled over and stopped her car on the side of the road. Tarango and Alarcon were standing by the trunk of Alarcon's vehicle when a car driven by Zack Martin struck the car from behind. Tarango was seriously injured.

Tarango received $25,000 in liability benefits from Martin's liability insurance carrier. She then made claims against Alarcon's Allstate underinsured motorist coverage under which she was a Class II passenger insured and against her own underinsured motorist coverage on two policies with Farmers under which she was a Class I insured. Tarango's Class II coverage under the Allstate policy was $25,000. Her two Farmers policies contained coverage of $25,000 each. Class I insureds are the named insured, the spouse, and those relatives that reside in the household while Class II insureds are insured by virtue of their passenger status in an insured vehicle.

Pursuant to arbitration clauses in all policies, the issue of Tarango's damages was arbitrated. The arbitrators determined that her total damages were $40,000. After deducting the $25,000 in liability benefits already received, the arbitrators entered a total underinsured benefits award of $15,000 to Tarango. *See generally Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 219, 704 P.2d 1092, 1095 (1985) (an insured is entitled to underinsurance benefits to the extent his underinsured coverage exceeds the tortfeasor's liability insurance). Tarango is not a party to this appeal; the sole dispute is between Farmers and Allstate.

Farmers contends that the trial court's decision holding Allstate totally responsible for the $15,000 award is supported by *Branchal v. Safeco Insurance Co.*, 106 N.M. 70, 738 P.2d 1315 (1987). In *Branchal*, we required the Class II insurer of the vehicle in which the injured party was a passenger to pay uninsured benefits up to its policy limits before the injured party's own Class I insurer was required to pay on its uninsured motorist coverage. *Id.* "The policy covering the vehicle involved in the accident is closer to the risk than the policy insuring the non-owner driver or passenger." *Id.* at 71, 738 P.2d at 1316.

Allstate contends, however, that *Branchal* is not dispositive because *Morro v. Farmers Insurance Group*, 106 N.M. 669, 748 P.2d 512 (1988), dictates a different result. In *Morro*, this Court held that Morro, an injured passenger, could stack a $25,000 Class II underinsured motorist policy with her two $25,000 Class I underinsured policies which she had purchased for autos not involved in the accident. *Id.* at 672, 748 P.2d at 515. Thus, Morro had $75,000 in underinsured coverage from three policies. Her damages exceeded the $75,000 coverage. The tortfeasor's liability carrier settled with Morro for its policy limits of $25,000, thereby leaving her with an excess $50,000 underinsured entitlement. The trial court required each underinsured carrier to pay its pro-rata share. *Id.* at 673, 748 P.2d at 516. It is Allstate's position that *Morro* requires that the coverage under Farmers' two policies be stacked with its underinsured coverage and that all three policies should pay the $15,000 amount on a pro-rata basis.

In *Morro*, the Class II carrier wanted to set off the full liability payment against the Class II coverage, or at least to set off one-half of the liability (based on the number of insurers) rather than to set off one-third (based on the number of policies). The Class I carrier did not object to the pro rata credit of one-third that was given by the trial court to the Class II insured. In *Morro*, the Class II policy was treated by the trial court as concurrent coverage with the Class I policies. Neither party raised an issue of primary as opposed to secondary coverage. We continue to agree with the view stated in *Branchal*:

[I]t is the better and more reasonable rule to require the insurer of the vehicle in which the injured party was riding as a passenger, rather than as an owner or

driver, to first pay uninsured motorist benefits before the injured party's insurer may be required to pay under its uninsured motorist coverage.

*Branchal,* 106 N.M. at 70, 738 P.2d at 1315. We fail to perceive any valid reason why the rationale of *Branchal* should not be applied to both uninsured and underinsured circumstances. Allstate's policy was written to cover passengers in its insured's vehicle, and premiums were paid specifically for that coverage. The trial court was correct when it concluded that there was no need to stack the Tarango underinsurance policies issued by Farmers.

Under the facts of this case, Allstate had primary coverage. The underinsured liability must first be assessed against Allstate to the limits of its policy before demand can be made upon Farmers under its secondary policies. To allow proration as urged by Allstate would require Farmers to pay twice as much under its policies even though its insured's vehicle was not involved in the collision.

For these reasons, we conclude that the trial court was correct in issuing its declaratory judgment requiring Allstate to pay the entire amount of the underinsurance entitlement to Tarango. The judgment is affirmed.

**IT IS SO ORDERED.**

RANSOM, C.J., and BACA, J., concur.